A. H. JANSEN, Appellee, v. M. A. CLARK et al., Appellants.

VENDOR AND PURCHASER: Purchase Price—Who Entitled to Payment. The act of successive owners of land in conveying it subject to a prior and outstanding contract to sell, executed by a former grantor-owner, carries the right to each grantee to receive the amount due on said outstanding contract, even though said contract was not formally delivered to him, in preference to one who bases his right on an assignment of said contract by one who had parted with all interest in the land.

Headnote 1: 39 Cyc. pp. 1651 (Anno.), 1663, 1664.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 16, 1926.

SUIT and cross-petition to quiet title to two town lots. Decree for plaintiff. Defendants appeal.—*Affirmed.*

*Jepson, Struble, Anderson & Sifford* and *T. M. Zink,* for appellants.

*Fisher & Riter* and *Roseberry & Roseberry,* for appellee.

MORLING, J.—O. E. Barnes was the owner of the lots. On March 10, 1922, O. E. Barnes and wife, Minnie E. Barnes, contracted to sell them to V. J. Martin. By this contract Martin was to pay $3,900 on April 1, 1927. The question is, Who is entitled to the $3,900?

On February 14, 1923, Barnes and wife conveyed the lots by warranty deed to Spellman. The deed recited that it was subject to the Martin contract. On June 17, 1923, the defendant Clark and O. E. Barnes signed an exchange agreement, sub-

ject to the approval of Ritchie, by which Barnes was to deliver
(to whom not specified) the Martin contract. Minnie E. Barnes
did not sign the Clark contract. Ritchie approved it. Clark
indorsed upon this instrument a receipt by Clark of the Martin
contract and an assignment dated June 18, 1923, by Clark to
Ritchie of all Clark's interest in the Clark contract. O. E.
Barnes and Minnie E. Barnes assigned their duplicate of the
Martin contract to Clark, about the time of the making of the
Barnes-Clark contract. Spellman, on July 18, 1923, conveyed
the lots to Minnie E. Barnes, for the stated consideration of
$1.00 and other valuable considerations, subject to the rights of
Martin. On November 24, 1923, Minnie E. Barnes made a con-
tract with plaintiff, by which plaintiff agreed to convey to her a
tract of land, plaintiff acknowledging receipt of $3,900. It
seems to be assumed that this $3,900 was represented by the
amount owed on the Martin contract. On the same day, Minnie
E. Barnes and husband conveyed the lots to plaintiff by war-
ranty deed, stated to be subject to contract of $3,900, and made
a written assignment to plaintiff of the Martin contract, with
covenant of title. A copy of the Martin contract was delivered
by Barnes to plaintiff, but plaintiff never had the original,
Barnes stating that it was lost.

Barnes did not deed the property to Clark, stating as his
reason that Clark had not carried out his contract with Barnes.
There is evidence that, when Barnes assigned the Martin con-
tract to Clark, he said that they would get and send him deed
from Spellman; that later, Mrs. Barnes said she would get a
deed perfecting the title to the property in the name of Ritchie.
O. E. Barnes is said to have stated that Spellman claimed to
hold the title to the lots for a debt. On July 28, 1923, Barnes
wrote to Clark that Mrs. Barnes "says they refuse to give a deed
without she can show them the original contract which it is
subject to. Now if you will mail the contract I will forward
it to her and direct her to mail all necessary papers to you."

Clark then replied that he delivered the contract to Ritchie,
and that:

"He got the money in his bank at Sioux City and of course
we both lay ourselves at his mercy if that deed don't come right

away. Mrs. Barnes also signed the contract you know and deed must come and come quick and no fooling."

Ritchie had kept the crop on the land which was to be traded to Barnes under the Clark contract. Apparently the Barneses got nothing from the Clark deal. Barnes returned the Clark contract to Clark in December, 1923. Apparently, when Mrs. Barnes received the Spellman deed, neither she nor Barnes intended that defendants should have the lots or the money owed on them. However this may be, defendants do not allege or prove that they paid value for the Martin contract without notice. Ritchie was not a witness. On April 16, 1924, Clark wrote to Barnes:

"Was talking to a party today, who told me you had brought suit to reinstate your contract on LeMars, Ia. house. If you need any evidence I can give it which should reinstate your title to you."

Clark says that, when he wrote the letter, he knew that there was trouble over the deal, but did not know that Barnes claimed that their contract had been merely loaned to him. Both the original and the duplicate of the Martin contract are lost. The petition is to quiet title, and is aimed at the Clark-Barnes-Ritchie paper of June 17, 1923, and asks that it be expunged from the record, as a cloud on title. Ritchie filed an answer, denying knowledge or information of the truth of plaintiff's purchase of the lots, and alleging plaintiff's rights to be inferior to his. By cross-petition, Ritchie sets up the assignment of the Martin contract by Barnes to Clark and by Clark to Ritchie, and alleges that plaintiff has no interest in the real estate or contract, "for the reason he holds the record title to said real property, and has not assignment of the contract with V. J. Martin, which contract is held and owned by this defendant. That, by reason of the defendant's ownership of the contract, * * * defendant is entitled to have the title to above described real property quieted in him, to the end that final payment by V. J. Martin upon his contract may be made to this defendant, and this defendant be in position to convey * * *"

In reply, plaintiff states that he holds the title "as purchaser for full value without notice of claims of H. A. Ritchie,

subject to the contract with V. J. Martin." Clark made no answer.

Plaintiff testified that he did not know whether Barnes had title to the lots, and had no knowledge of the claim of defendants until ten days after his deal with Barnes. He says that he did not consider the land which he was trading to Barnes worth the amount of the mortgages upon it; did not record his own deed because he didn't want to pay the taxes; has collected the rents; and has not conveyed to Barnes.

Neither party has shown payment of a valuable consideration in good faith, prior to notice. Therefore no question of superiority or priority of equities, or of the rights of bona-fide purchasers, and no question under the recording laws, are involved. *Sillyman v. King,* 36 Iowa 207; *Dorsey v. Banks,* 88 Iowa 595; Code of 1897, Section 2925. No question of express or implied warranty of title to the Martin contract by their assignment, and no question of estoppel or of priority by reason of prior notice to debtor, are before us. The subject of the assignment was not a negotiable instrument. The only question, therefore, is one of title, to be determined from the face of the instruments.

The conveyance to Spellman carried with it the title to and right to collect the amount owed by Martin. *In re Estate of Orwig,* 185 Iowa 913. The agreement between Barnes and Clark was to deliver the contract, and the contract was assigned. The lots were not conveyed, nor was there in the writing an agreement to convey them. Barnes did not at that time own the lots, and had no title to or right to collect the amount owed by Martin. As Barnes had nothing to assign, Clark got nothing under the assignment. *Vanderlip v. Barnes,* 101 Neb. 573 (163 N. W. 856). Spellman, at the time of his conveyance to Minnie E. Barnes, was the owner of the Martin debt. The conveyance by Spellman to Minnie E. Barnes, made July 18, 1923, passed to her the ownership and right to collect the debt owed by Martin, in the absence of estoppel. She still owned this claim when she made the deed and assignment to plaintiff. A delivery of the original Martin contract was not necessary to pass the title or the right to the amount owed upon it. *Richardson v. White,* 167 Mass. 58 (44 N. E. 1072); *Northwestern Mut. L. Ins. Co. v.*

*Wright,* 153 Wis. 252 (140 N. W. 1078). The claim put forth by the defendant in his answer, that plaintiff had not an assignment of the Martin contract, is not sustained. Defendant had, on the record, merely an assignment of one of the duplicate written evidences of the contract, without the title to the debt or the money owed upon it. The title is in the plaintiff.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.