E. C. WELLER, APPELLEE, v. L. D. PUTNAM, APPELLANT.

171 N. W. 2d 767

Filed October 24, 1969. No. 37119.

Dudley Herman and Milton C. Murphy, for appellant.

Farman & Cassell and Jewell, Otte & Pollock, for appellee.

Heard before WHITE, C. J., CARTER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Plaintiff brought an action to collect the balance remaining on a demand promissory note less an amount credited to defendant involving a split of real estate loan fees. The original note, executed October 14, 1963, was for $60,000, defendant had repaid $10,000 on November 13, 1963, and $15,000 on December 3, 1963. Defendant cross-petitioned praying for an accounting. The district court sustained demurrers to the first and second causes of action of defendant's cross-petition. Defendant has appealed to this court.

Defendant's answer admitted that the note had been executed, consideration received, partial payment made, and a demand for full payment made all as plaintiff had

alleged. Defendant however alleged that at the time of the execution of said note plaintiff was indebted to defendant for a large amount of money; that plaintiff was in very poor health; that defendant was advised and counseled not to disturb plaintiff by demanding the full amount due defendant at that time; and that it was in the best interests of both parties for the defendant to execute the note; and that an accounting would be had later when the plaintiff's health had improved; and further that defendant orally agreed at that time to a later adjustment of the amounts due in an accounting between them.

Defendant's cross-petition contained three causes of action, the first two of which are before this court.

Defendant in his first cause of action alleged that defendant at plaintiff's request agreed to and did operate plaintiff's businesses which were in financial difficulty on the agreement that once the businesses were financially successful the defendant would be paid a fee of 20 percent of plaintiff's remaining assets. This occurred commencing in December 1951 and ending in December 1952. Defendant alleged that shortly before plaintiff filed this cause of action plaintiff acknowledged the value of defendant's services and agreed to an accounting of all debts between the parties. In addition defendant's first cause of action alleged that at about the time the above transaction was drawing to a close plaintiff took defendant to the business of a third party, which third party was interested in securing a loan from plaintiff. Plaintiff felt the loan was a poor security risk and asked defendant to guarantee the loan which defendant alleges that he did. Further in 1959 this third party was in default, the loan was foreclosed, and the property leased back to the third party. Then in 1960 the plaintiff became ill and asked the defendant again to carry on for him under the arrangements existing in the 1951-1952 undertaking. Of particular concern to the plaintiff at this time was the loan to the third party.

Defendant assisted the third party in making the third party's interests go to such a point that the indebtedness of the third party to the plaintiff could be entirely repaid. Whereupon defendant alleges that he was to receive 1 percent for making and guaranteeing said loan and 1 percent upon all interest paid and collected all to be due upon the full payment of the loan which defendant alleges was fully repaid in December of 1966 and that plaintiff was indebted to defendant pursuant to this agreement.

Defendant's second cause of action is that plaintiff in 1964 after numerous unsuccessful attempts to procure sufficient irrigation water on 3 quarter sections of land, "* * * knowing the defendant to be an accomplished and recognized well witcher, came to the defendant and asked him to locate a well upon each quarter section of land * * *." Defendant alleges that he undertook to find the water on a contingent basis, that he was to receive $15,000 for each irrigation well located, that he did locate an irrigation well on each quarter section of land, and that plaintiff was therefore indebted to defendant for these services in the amount of $45,000.

The issue presented to this court is whether or not the cross-petition of the defendant is properly pleaded in this action. This issue apparently was presented to the trial court by plaintiff's demurrers. A party may demur to a pleading only upon such grounds as are specified in the statute. Central Nebraska Public Power & Irr. Dist. v. Walston, 140 Neb. 190, 299 N. W. 609; § 25-806, R. R. S. 1943. It is our opinion that the proper manner in which to challenge the appropriateness of a counter-claim or cross-petition is by motion to strike rather than a demurrer. Standing alone a counterclaim or cross-petition might well state facts sufficient to constitute a cause of action but at the same time not be proper as a counterclaim or cross-petition. Brugman v. Burr, 30 Neb. 406, 46 N. W. 644. See, also, O'Shea v. O'Shea, 143 Neb. 843, 11 N. W. 2d 540; McGerr v.

Marsh, 148 Neb. 50, 26 N. W. 2d 374; Rogers v. Western Electric Co., 179 Neb. 359, 138 N. W. 2d 423.

Both of the parties have joined issue in this court on the sole issue of whether the cross-petition pleaded herein may be properly filed and tried in this case. That being true, we will consider the case as if presented properly by motions to strike.

The issue presented is a procedural one. The full ambit of the defendant's attack upon the lower court's ruling sustaining the demurrers in this case is contained in his proposition of law No. II which is stated as follows: "A defendant in an action is not restricted to the counter-claim provided for in Secs. 25-812 and 25-813, R. R. S. 1943, but may in a proper case seek affirmative relief against the plaintiff, based upon mutual existing obligations." Again, the issue in this case is narrowed further by apparent agreement that this general proposition of law is accurate. Both parties cite and rely upon the following cases: Rogers v. Western Electric Co., supra; Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298; Louis Hoffman Co. v. Western Smelt. & Refin. Co., 150 Neb. 524, 34 N. W. 2d 889; Indiana Harbor Belt R.R. Co. v Alpirn, 139 Neb. 14, 296 N. W. 158.

An analysis of the argument in this case reveals that the argument is further narrowed to a question of the interpretations of our holdings in the recent case of Rogers v. Western Electric Co., supra, and the basic case of Armstrong v. Mayer, 69 Neb. 187, 95 N. W. 51. The defendant does not contend that his cross-petition or cross-bill filed herein is authorized by the appropriate statutory sections 25-812 and 25-813, R. R. S. 1943. He contends, first, as is stated verbatim in his proposition of law, that our case holdings have expanded the restrictions of the statutes; and second, therefore, his cross-petition or cross-bill herein is authorized by the holdings of the authorities cited. With the first contention we agree. In Armstrong v. Mayer, supra, this court held:

"A defendant in an action is not restricted to the counter-claim provided for in sections 100 and 101 of the code (now sections 25-812 and 25-813, R. R. S. 1943), but, in a proper case, may seek affirmative relief, either against the plaintiff or against codefendants, by cross-petition." The rationale of this holding will not be recited herein. Suffice it to say that this court has long held that outside the statute, in either law or equitable actions, in a proper case, a defendant may seek affirmative relief against a plaintiff by cross-petition.

These decisions and the text authorities extensively cited by appellant clearly support the general proposition that he contends for, that the court, outside of the range of the statute, may permissibly grant the right to file a cross-petition seeking affirmative relief beyond the scope of the precise issues presented by plaintiff's petition. Applying these general principles of the purposes and reasons for the permission of the filing of a cross-petition outside the ambit of the statute, the defendant argues as an original matter that his cross-petition should be permitted under the particular equities and the circumstances of this case. We are not required, however, to originally determine whether there are any boundaries to a defendant's right to file a cross-petition or a cross-bill, as distinguished from a statutory counterclaim. The limitations on the right to file a cross-petition or a cross-bill, either in a law or equity action, have been definitively established and followed in this state since the case of Armstrong v. Mayer, *supra*. In the recent case of Rogers v. Western Electric Co., *supra*, the interpretation of which the parties join issue here, this court exhaustively reviewed our holdings on this precise procedural issue, reaffirmed the holding and rationale of Armstrong v. Mayer, *supra*, and precisely and accurately stated the controlling rules and principles upon which they are based. The court said: "If we are to accept the true spirit of the reformed procedure intended by the code, then it is the substance of

the action rather than the form of it which will determine the availability of relief. The criterion to be applied is that the issues raised by the cross-bill must be so closely connected with the cause of action in the original suit that a cross-claim is a mere auxiliary or dependency upon the original action. The new issues which a defendant may introduce by cross-claim are to be limited to such as it is necessary for the court to have before it in deciding the questions raised in the original suit in order to do complete justice to all parties with respect to the cause of action on which the plaintiff bases his claim to relief. If a defendant in filing a cross-bill attempts to go beyond this and to introduce new and distinct matter not essential to the proper determination of the issue put in litigation by the original bill, although he may show a perfect case against either the plaintiff or one or more of his co-defendants, his pleading will not be permitted as a cross-bill. New and distinct matter not maintainable under the provisions of the code as a counterclaim and not involved in a proper determination of the subject matter of the original suit must be litigated in a separate action. * * *

"Even under the chancery practice, it was held that the cross-suit must be germane to the original suit and the new issues which a defendant could introduce by a cross-bill were limited to such as it was necessary for the court to have before it in deciding the question raised in the original suit.

"As we said in Armstrong v. Mayer, 69 Neb. 187, 95 N. W. 51: 'We see no reason to doubt that the matters set up in the cross petition must be germane to the original suit under the code, quite as much as under the chancery practice.' We can see no reason to deviate from this rule."

Applying these principles, it is apparent that the alleged well-witching contract set out in cause of action No. 2 is not remotely connected with the subject matter of the original action, which is a suit for the balance on

a promissory note. As to the first cause of action, it is clear that the original cross-petition of the defendant filed herein alleged a cause of action on which the statute of limitations had long since run. On attack, the defendant filed an amendment to this first cause of action, seeking to remedy this defect, by alleging that in 1952 the plaintiff made a loan to James Corkle, secured by a real estate mortgage; that the defendant guaranteed to the plaintiff the payment in full of the loan; that in consideration thereof plaintiff agreed to pay defendant one percent of all principal and interest paid on the Corkle loan; and that said compensation was "not to become due and payable until all of the principal and interest was paid by Corkle to the plaintiff." The defendant in his cross-petition further alleges that the final payment thereof under this allegation was made in December 1966. The defendant's delemma is obvious. Giving maximum reach to the allegations of his petition, he has alleged two demands in his first cause of action, the first of which the statute of limitations has destroyed its life, and the second in which he seeks recovery of a $527.50 balance which did not accrue, by the allegations of the cross-petition, until December 1966, approximately 10 or 11 months after the filing of the plaintiff's action. We have long followed the rule in Nebraska that a counterclaim, set-off, or cross-petition, to be available as a matter of affirmative defense or affirmative relief, must be a claim upon which the defendant could, at the date of the commencement of the plaintiff's suit, have maintained in an action on his part against the plaintiff. Simpson v. Jennings, 15 Neb. 671, 19 N. W. 473; Bank of Crab Orchard v. Myers, 120 Neb. 84, 231 N. W. 513; Gurske v. Kelpin, 61 Neb. 517, 85 N. W. 557; American Gas Construction Co. v. Lisco, 122 Neb. 607, 241 N. W. 89.

The assignments of error as supported by the contentions of the defendant cannot be sustained, and for

that reason the judgment of the district court is affirmed.

AFFIRMED.

SPENCER, J., participating on briefs.

BOSLAUGH, J., concurs in the result.